THOMAS, Respondent, vs. CITY OF APPLETON, Appellant.

*November 29—December 30, 1949.*

*Harry P. Hoeffel* of Appleton, for the appellant.

For the respondent there was a brief by *Sigman & Sigman* of Appleton, and oral argument by *Abraham Sigman*.

BROWN, J. The question is whether this case is ruled by *Hyer v. Janesville* (1898), 101 Wis. 371, 77 N. W. 729, and *Steele v. Chippewa Falls* (1935), 217 Wis. 1, 258 N. W. 181, which are the two most recent of our decisions on the subject which have been cited to us. In the former there was a verdict for plaintiff, judgment upon it, and on appeal the judgment was reversed. The complaint alleged that the sidewalk was covered with ridges of ice and snow against one of which the plaintiff struck her foot, causing her to fall. There were other allegations concerning notice to or knowledge by the city of the condition of the walk. Plaintiff testified that while she was walking on the walk she suddenly fell backward, striking first on her hips and then on the back of her head. The proof was that snow had accumulated from frequent falls to a depth of about two inches which had become softened by a thaw and then turned to ice with footprints indented therein. The court, page 376, held that if the fall was caused by the mere slippery condition of the walk the city was not liable but if she fell because her feet came in contact with an obstruction the action would lie.

There was no evidence as to which had occurred and the jury was not permitted to guess.

In *Steele v. Chippewa Falls, supra,* ice and snow accumulated and a sloping sidewalk became very rough and slippery. It stayed that way for a long time. The trial court directed a nonsuit against plaintiff who had fallen, saying (pp. 3, 4) : " 'Undoubtedly it was dangerous and perhaps very dangerous in walking down hill on that slippery sidewalk, but that is one of the dangers that pedestrians have to contend with.' " The supreme court sustained the trial court and added (p. 4) : "There is no evidence in the case from which an inference could be drawn that the plaintiff stubbed her toe, caught her heel, or fell for any other reason than that she slipped upon a glary uneven surface caused wholly by natural conditions."

In the instant case, Mr. Thomas testified he slipped; he slipped on top of the ridge where it was slippery; he did not trip.

It should be added that Mr. Thomas and those of his witnesses who spoke to the point testified that because of the topography of the place snow drifted over the walk continually. Thus his witness Manier said it gets drifted with the least little wind. Mrs. Manier said there is always considerable drifting from that large open space (Goodland Field). Mr. Schumacher said the snow would drift in. Mr. McHugh said the sidewalk was slippery in spots, snow would drift across and you could not see those spots. As summarized in the appendix: "There was sure a lot drifted. Goodland Field, if there is any wind you can go out and shovel six to eight inches off. It takes a light wind to drift it there. . . . On February 9th, . . . the condition of the sidewalk was bad. . . . I don't know whether the snow came from drifting across the field or from a snowfall." Mr. Bauer testified to drifting. So did Mr. De Witt. And Mr. Thomas said regardless of what way the wind blew, it drifted that snow.

No one, of course, can say how long it will take a drift to form across a walk. Given the presence of snow in the area, it depends on wind and weather, and plaintiff and his witnesses proved that the slightest wind made snowdrifts here. It would be an unreasonable burden to require the city to maintain the sidewalk free from drifts under such conditions and it would be pure speculation to assert that a drift removed in the afternoon would not be back the next morning.

Upon the record in this action and on the authority of the two cases cited herein, the judgment must be reversed.

*By the Court.*—Judgment reversed with directions to dismiss plaintiff's complaint.

HUGHES, J. (*dissenting*). I am of the opinion that the record in this case contains ample evidence to sustain the verdict of the jury and the judgment thereon.

The majority opinion stresses the fact that the plaintiff slipped rather than tripped. I cannot see any significance in the point.

The undisputed facts are that the city of Appleton maintains a playing field over which the wind has a clear sweep. The cyclone fence which incloses the field causes snow to drift on the sidewalk adjacent to the field.

The plaintiff was injured when he fell upon this sidewalk on February 9, 1948. The city had failed to take care of the walk all winter. Upon complaint of pedestrians it made an attempt to remove the accumulation on January 15th, but did not succeed because of its frozen condition. There was some evidence that it then applied cinders. Subsequent drifting and snowfalls were ignored until after plaintiff was injured, when the condition was remedied.

The accumulation upon the sidewalk where plaintiff fell varied from four to fifteen inches and was ridged. It had existed in substantially the same condition for weeks.

Those facts justified the jury's finding of negligence.

The only speculation in this case that I can observe is that offered in the majority opinion,—that if the city had used due care to remove the ice and snow "a drift removed in the afternoon would [not] be back the next morning."

If the city had used due care and removed the snow or applied cinders or chemicals at reasonable intervals and more snow accumulated notwithstanding such proper care, then of course there could be no recovery for resulting injuries. Those, however, are not the facts of this case.

In addition to the fact that since the cases of *Hyer v. Janesville* (1898), 101 Wis. 371, 77 N. W. 729, and *Steele v. Chippewa Falls* (1935), 217 Wis. 1, 258 N. W. 181, chemicals for ice removal have been put in common use by municipalities, the facts in this case are greatly different.

In neither of those cases was the accumulation so great nor had it existed so long a time as here.

In the *Hyer Case, supra,* this court intimated at least that if the facts alleged in the complaint, which were similar to the facts established upon the trial of this action, had existed, liability would have followed. The court said (pp. 373, 374):

"The most the evidence shows is that a few days before the injury there was a coating of about two inches in depth of snow, packed hard evenly over the walk by travel; that the walk had been in that condition for some time; that the weather turned warm, causing the snow to become soft, wet, and sloppy, and then suddenly turned cold, causing ice to form with such footprints therein as would naturally be made by travel under such conditions. The bed of ice and snow three to ten inches deep, mentioned in the complaint, does not appear to have been observed by witnesses, nor the high ridges spoken of, nor the long-continued defective condition."

It would not be unreasonable to require cities to remove snow under the circumstances here existing or to apply chemicals or cinders to protect pedestrians.

I am satisfied that the evidence presented a jury question and that the judgment of the trial court should be affirmed.

I am authorized to say that Mr. Justice BROADFOOT concurs in this dissent.